CITIZENS STATE BANK, a Montana Banking Corporation, Plaintiff and Respondent, v. CHARLES H. DUUS and INEZ D. DUUS, his wife, Defendants and Appellants.

No. 11659.
Submitted September 18, 1969.
Decided October 10, 1969.
459 P.2d 696.

LaRue Smith (argued) Great Falls, for defendants-appellants.

·· Claude A. Johnson and Laurence W. Peterson, Hamilton, Boone & Karlberg, William T. Boone (argued), Missoula, for plaintiff-respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from two judgments, one a summary judgment foreclosing a chattel mortgage in favor of plaintiff, the other a judgment for plaintiff on defendants' cross-complaints and counterclaims after trial without a jury.

The original action was commenced on August 30, 1968 to recover on two promissory notes signed by Charles H. Duus and Inez D. Duus. The notes were dated October 20, 1965 and November 9, 1965. A chattel mortgage executed by Charles H. Duus on November 9, 1965 secured the payment of the two notes and the action sought foreclosure.

On October 14, 1968 defendants each filed a separate answer. The answer of Charles was a general denial. The separate answer of Inez was a general denial plus an affirmative defense to the effect that Inez executed the note solely for the purpose of waiving her right of dower.

On October 16, 1968 Inez filed a demand for jury trial. On November 5, 1968 the district court denied the demand for jury and set the trial before the court for December 6, 1968.

On November 22, 1968 a deposition was taken by plaintiff of Charles and Inez. The district judge was in attendance at the taking of the deposition and the following colloquy appears:

"THE COURT: The record will show that this is Civil Case No. 10845, Citizens State Bank versus Charles H. Duus & Inez D. Duus, his wife. There is present counsel for the plaintiff, additional names being entered and there is present counsel for the defendant. The proceedings is that of a foreclosure of chattel mortgage. The counsel for the plaintiff being Mr.

Bill Boone and Mr. Claude A. Johnson. Counsel for the defendant being Mr. LaRue Smith from Great Falls, Montana. Now, the only information that the Court has was that there was to be held a deposition which was to be taken in connection with this matter. It was requested that the Court listen to it with the understanding that after that a ruling might be made by the Court because of the information that would be available from the questions and answers in the deposition, and which I am willing to do being here. Beyond that I make no commitments and the Court is only here merely as a listener. I will hear any counsel if any counsel desires at this point.

"MR. BOONE: Well, if the Court please, at this time it is my understanding the counsel had agreed between themselves that after the depositions were taken that there would be presented to, Your Honor, if the circumstances were to warrant it a motion for a summary judgment, and with the counsel for the defendant waiving notice of that motion as the rules require. The only change, as I see it would be that Mr. Smith, representing the defendants, now seeks to file a counterclaim in addition to the answer which has been previously filed, and if the Court in its discretion allows the counterclaim to be filed I think that we can still proceed on the same basis, and at least after the matter of the summary judgment, if the facts are deemed warranted, present to the [sic] with respect to the complaint.

"THE COURT: The court's position is that the Court being here to allow a motion and being advised in this matter will assist the counsel in their presentations of this matter in so far as it is possible to do so. The counsel must bear in mind, however, that commitments were made for this afternoon in Missoula for counsel coming into Missoula from other parts of the district. To that extent, the Court is perfectly willing to sit and hear and accept matters to the extent that it can be.

"MR. BOONE: In so far as you are concerned, Mr. Smith, would there be an objection on your part as to our proceeding on that basis?

"MR. SMITH: Well, where is the Clerk of the Court's office. I am now going to file a counterclaim, and I would like to advise the Court that we are going to file another counterclaim in the same action. And I don't think that the Summary Judgment on the complaint is going to be in line today; and I did agree with Mr. Johnson on the telephone on the basis of the facts that I had at that time that we could proceed as planned to make this motion. I, in the interest to my client, have to withdraw that agreement and take what advantage that I can now of the rules. I am not in a position for Summary Judgment on this case at this time. I didn't have all the facts at the time that I made that agreement. I have additional facts and there still is another Counterclaim and I suppose that the Court would like to dispose of all of this thing at one time, not piece-meal. I think the Counterclaims are substantial and point out some rights that my client has and they should be asserted in this action.

"THE COURT: You may assert as you desire, Mr. Smith, within the rules as they apply. But the Court does not look with favor upon an agreement made for a certain procedure of a certain proceedings for which you have come a great distance and the other counsel have come likewise; and the commitments have been made. And here at this point by reason of matters within your control to question that proceedings are not to take place, and in so far as the Court is concerned, if you want to take the deposition now I will listen. You set it, and that is all I am going to do right now.

"MR. SMITH: We have no objection to the taking of the deposition at this time.

"THE COURT: What you do after the taking of that deposition is something else and the Court will decide after that deposition is taken. At least consider the time of the people concerned here this afternoon.

"MR. BOONE: Very well, then if the Court please, we will call as our first witness Mrs. Duus."

22

On this same day the plaintiff filed a motion for summary judgment in the action to foreclose the chattel mortgage. On the same day defendant Charles Duus filed a cross-complaint and counterclaim.

On December 6, 1968 the action to foreclose the chattel mortgage came on for trial before the court without a jury. The plaintiff's motion for summary judgment was renewed. On the same date, Charles Duus filed a second cross-complaint and counterclaim together with a demand for jury trial on both the first and second cross-complaints and counterclaims. The demand was denied and the trial on the cross-complaints and counterclaims set for trial without jury on January 7, 1969.

On December 13, 1968 the Court filed its order granting summary judgment and judgment was entered. On the same day the transcriptions of the depositions were received and filed.

On January 7, 1969 trial was had, without a jury, on the cross-complaints and counterclaims. Judgment was entered in favor of the plaintiff.

We do not have before us the transcript of the trial proceedings. The issues on this appeal are:

First, whether the trial court erred in granting summary judgment foreclosing the chattel mortgage when the depositions were not introduced as evidence; and thus nothing appears to support the judgment.

Second, whether the trial court erred in denying the motion for trial by jury.

Heretofore we have set forth the colloquy concerning the depositions and the fact that the district judge heard them and they were filed.

Rule 56(c), M.R.Civ.P. states in pertinent part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."

The defendants argue that until admitted into evidence a deposition has no more probative value than an affidavit concerning which Rule 56(c) states: "Affidavits shall not be considered for any purpose on motion for summary judgment."

Silloway v. Jorgenson, 146 Mont. 307, 406 P.2d 167 (1965), involved an appeal from an order granting summary judgment. One finds the following language in that decision:

"Mr. Silloway's own deposition removed all doubt as to Mrs. Silloway's mental capacity at the time the deed was executed, and of itself was sufficient to permit the trial judge to determine that the case contained no issue of material fact or controversy relating to incompetency. The deposition reveals these questions and answers by Mr. Silloway * * *.

"Under the circumstances of this case as shown by the depositions on file, the lower court did not err in granting summary judgment and that judgment is hereby affirmed."

See also Hager v. Tandy, 146 Mont. 531, 410 P.2d 447 (1956); Dean v. First National Bank of Great Falls, Mont., 452 P.2d 402 (1969).

Commenting on the almost identical provisions of Rule 56(c) of the Federal Rules of Civil Procedure, (the Federal Rules, unlike the Montana Rules, allow consideration of affidavits), Barron and Holtzoff have observed:

"On a motion for summary judgment, the formal issues presented by the pleadings are not controlling and the court must consider the affidavits and other matters presented by the parties to determine whether the motion should be granted. It has been stated that the court should take the pleadings as they have been shaped to ascertain what issues of fact they make and then consider the affidavits, depositions, admissions, answers to interrogatories and other similar material to determine whether any of the issues are real and genuine. On such a motion the court considers the entire setting of the case

and all papers of record. The pleadings as a whole, and not merely the complaint, are considered. In addition to the pleadings, the court considers affidavits, admissions, stipulations, depositions, and answers to interrogatories, which are submitted for or against the motion." 3 Barron and Holtzoff, Federal Practice and Procedure, § 1236 at pp. 157-59. We noted before that the district court judge was present at the depositions of Inez D. Duus and Charles H. Duus. Oral testimony is properly within the matters which the court may consider on motions for summary judgment.

In this connection we call attention to Rule 43(e), M.R.Civ. P., which provides:

"*Evidence on Motions*: Except as otherwise provided in Rule 56, when a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

The exception noted in connection with Rule 56 is the provision against the use of affidavits to show facts not appearing of record on a motion for summary judgment, which does not exclude the use by the court of oral testimony upon such motions. Our rules are patterned after the federal rules and federal courts have ruled that oral testimony may be considered upon motions for summary judgment.

In 3 Barron & Holtzoff, Federal Practice and Procedure § 1236, p. 162, this appears:

"The court may even hear oral testimony on a motion for summary judgment if it so desires. Rule 43(e), which authorizes the use of oral testimony on motions, has been held applicable to motions for summary judgment." See Daniels v. Paddock, 145 Mont. 207; 399 P.2d 740 (1965); Silloway v. Jorgenson, supra.

The judge's presence at the taking of the deposition was a convenient substitute for presenting the testimony of Charles

H. Duus and Inez D. Duus at the hearing on the motion for summary judgment.

The purpose of summary judgment procedure has been summarized as: "* * * to promptly dispose of actions in which there is no genuine issue of fact, thereby eliminating unnecessary trial, delay, and expense." Silloway v. Jorgenson, supra.

Such purpose would be completely frustrated if the court were to acquiesce in defendants' contention that depositions must first be admitted into evidence before they may be considered on motions for summary judgment.

An independent consideration of the deposition shows that it does, in fact, contain an ample factual foundation to support the court's ruling. Indeed, the defendants admitted every material allegation of the plaintiff's complaint. Inez D. Duus admitted the execution and delivery of the two notes to the plaintiff. Further, she identified the signature of her husband as appearing on both notes. Inez D. Duus does not contest the fact that she executed the two notes. She also stated that she signed the notes at the same time as her husband.

Charles H. Duus acknowledged that his signature appears on the $21,923.73 note dated October 20, 1965, and on the $16,574.00 note dated November 9, 1965. Charles H. Duus does not question the $21,923.73 note in any respect. He also conceded that the settlement sheet marked as plaintiff's exhibit No. 4 correctly reflected the balance remaining on the two notes as of December 22, 1967 and that the only payment since December 22, 1967, was $50.00 applied to interest. Again at page 28 of his deposition, Charles H. Duus admitted that the settlement sheet accurately reflected what he owed to the bank; that no payments had been made on either note except for the $50.00 applied to interest and that the balance remaining unpaid on the two notes in the complaint was correct. He also acknowledged that the bank had made demands for payment. Charles H. Duus admitted that his signature appeared on the chattel

mortgage marked as plaintiff's exhibit No. 5 and apparently concedes that the chattel mortgage secured the payment of the two notes, although having admitted his signature thereon the document speaks for itself.

Without citation of authority, the defendants by their second claim of error argue that because their second cross-complaint and counterclaim was an action for damages they are thereby entitled to a jury trial as a matter of right. Such contention is clearly contrary to the weight of authority.

The Montana Constitution, Art. III, § 23 provides:

"The right of trial by jury shall be secured to all, and remain inviolate, but in all civil cases and in all criminal cases not amounting to felony, upon default of appearance, or by consent of the parties expressed in such manner as the law may prescribe, a trial by jury may be waived * * *."

Rule 38(a) of the Montana Rules of Civil Procedure provides:

"The right of trial by jury as declared by the constitution of the state of Montana or as given by statute of the state of Montana shall be preserved to the parties inviolate."

Rule 38(a) makes it clear that the Rules of Civil Procedure have not altered the substantive right to a trial by jury. Therefore, cases antedating the rules have relevance in determining the existence and extent of one's right to trial by jury.

The case of Butler Brothers Dev. Co. v. Butler, 111 Mont. 329, 108 P.2d 1041 (1941), involved action on a promissory note and to foreclose a trust deed securing the same. Defendant answered, admitting the execution of the note and trust deed and asserting a failure of consideration. Other parties intervened. Defendant cross-complained seeking damages against the interveners and demanded trial by jury. The lower court denied defendant's request and on appeal, the Supreme Court found no error in such denial. The court stated:

"Actions for mortgage foreclosures are equitable and are triable by the court without a jury and they cannot be trans-

formed into actions at law by merely raising an issue of law as a defense in the answer. 35 C.J. 166; 31 Am.Jur. 572; note in Ann.Cas.1914C, page 852.

"It is also well established that a court of equity once having jurisdiction of a suit will retain jurisdiction of it for all purposes and dispose of all questions in the case even though this involves a determination of legal issues. 31 Am.Jur. 567; 19 Am.Jur. 125; 35 C.J. 162."

Likewise the case of Merchants Fire Assur. Corp. of New York v. Watson, 104 Mont. 1, 64 P.2d 617 (1937), involved an action on a promissory note and to foreclose a lien securing the payment of the said note. The notes were given for premium payments on hail insurance. The answer set up what were variously called in the opinion, affirmative defenses or counterclaims. The defendant requested a trial by jury, but this was denied by the court. The Supreme Court found no error in such holding.

Also see Annotation, 17 A.L.R.3d 1321, Right in Equity Suit to Jury Trial of Counterclaim involving Legal Issue (1968).

"In the absence of a statute or rule of procedure dictating a contrary holding, the great weight of authority has always been to the effect that the interposition by the defendant in an equitable action of a counterclaim of a legal nature gives him no right to a jury trial, either of the case generally or of the issue raised by the counterclaim. Having elected to assert in equity—as he was certainly not bound to do—a legal counterclaim, the defendant has been held to have elected to have submitted all of the issues raised in the action to trial in accord with the rules of equity procedure." Ibid. § 3(a) at 1327.

Defendants have neither raised nor argued that their counterclaim was compulsory, and it is apparent that it is not. If the testimony at trial tended to show a compulsory counter-

claim, then defendants have not made the transcript thereof available.

Rule 13(a) of the M.R.Civ.P. requires that a pleading state a counterclaim "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim". Plaintiff submits that the counterclaim obviously does not arise out of the transaction or occurrence that is the subject matter of plaintiff's action on the two promissory notes and to foreclose a chattel mortgage.

The issues of fact and law presented by the complaint and counterclaim are not the same. To support its complaint on the two promissory notes and the foreclosure of the chattel mortgage, plaintiff had to prove defendants' execution of the notes and chattel mortgage in October and November 1965, nonpayment of the two notes, demand for payment, and the amount due and owing at the time of judgment. On the other hand, for his counterclaim, Charles H. Duus alleged, inter alia:

"On or about 25 November 1967, the said Charles H. Duus entered into a contract for the sale of real property to Robert D. Stuart for $12,000.00; a copy of which contract is attached and made a part of this counterclaim as Exhibit 'A'; and the plaintiff, Citizens State Bank was advised of this contract.

"At the time of the contract, Exhibit 'A', the real property described in that contract was subject to a first mortgage from the said Charles H. Duus and Inez D. Duus, his wife, to the Citizens State Bank; and said Citizens State Bank agreed to release its mortgage on the property described in Exhibit 'A' so the purchaser under Exhibit 'A', Robert D. Stuart, could refinance the purchase price.

"After the contract, Exhibit 'A', was made and entered into; the Citizens State Bank, intentionally, wrongfully, unlawfully and maliciously, secured another purchaser for said property, a partnership known as Sargent and McKinney; and compelled a sale to that partnership by refusing to release the first mortgage held by the Citizens State Bank on the real property

·described in Exhibit 'A' in favor of the original purchaser, Robert D. Stuart.

"As a result of these actions by the Citizens State Bank the contract, Exhibit 'A' was terminated; but Robert D. Stuart thereafter went to the Citizens State Bank and demanded from it; and was paid the sum of $1,000.00, as and for his ·damages caused by the interference with his part of the contract, Exhibit 'A'.

"That the said, Robert D. Stuart, would not have terminated the contract and refused to continue, but for the wrongful .acts of the Citizens State Bank."

In order to recover on a claim for wrongful interference with a contract, defendants generally had to show the existence of a valid and subsisting contract, and plaintiff's intentional and unjustified interference therewith resulting in damage. Prosser Torts 3rd Ed., § 123, pp. 950-73.

Charles H. Duus and Robert D. Stuart signed the purchase .agreement, and the release thereof, and both Charles H. Duus .and Inez D. Duus executed the deed to the other parties. The ·exhibits are acknowledged documents indicating the sale of real property was that of Duuses. If defendants controverted these documents, it would have been apparent from the transcript at trial, but defendants have chosen not to include the transcript as part of the record on appeal. Defendants claim that they suffered actual damages of $1,000.00, although the exhibits attached to the second cross-complaint and counterclaim will show that Duus, as a result of the sale to Sargent and McKinney, realized substantially more than would have been applied against their obligations to plaintiff had the contract with Stuart been consummated. Again, if defendants wished to controvert what the exhibits attached to the answer to the second cross-complaint and counterclaim clearly show, then the transcript was available for submission to the court.

This rendition illustrates that the claim and counterclaim involved different contracts, entered into at different dates

between different parties, and further that the chattel mortgage securing the notes in the original action covered personal property located in Hamilton, Montana, whereas the real estate mortgage covered real property located in Darby, Montana. The original action was for non-payment of promissory notes and to foreclose a chattel mortgage while the cross-complaint and counterclaim was an action in tort. The measure of computation of damages thus, would be materially different. Obviously neither the issues of fact or law are the same and further, the same evidence would not support or refute defendants' claim and counterclaim. Thus, the counterclaim cannot be said to arise out of the transaction or occurrence surrounding plaintiff's claim based on the two promissory notes and chattel mortgage.

Defendants' counterclaim was not compulsory and accordingly the trial court did not err in denying defendants' request for a jury trial.

No error having been shown, the judgments are affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICE JOHN C. HARRISON, and THE HONORABLE THOMAS DIGNAN, District Judge, sitting in place of MR. JUSTICE BONNER, concur.

MR. JUSTICE HASWELL deeming himself disqualified, did not sit in this cause.