NO. 84-143

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

GARY A. GRAY and DIANA M. GRAY,
husband and wife,

Plaintiffs and Appellants,

v.

CITY OF BILLINGS, et al.,

Defendants and Respondents.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone
              Honorable Robert Wilson, Judge presiding.

Counsel of Record:

        For Appellants:

            Jones, Jones & Work, Billings, Montana

        For Respondents:

            Peterson, Schofield & Leckie, Billings, Montana

_____

Submitted on briefs:  July 10, 1984

Decided:  October 15, 1984

Filed:  OCT 1 1984

*Ethel M. Harrison*
_____
               Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal from a judgment entered by the District Court of the Thirteenth Judicial District, Yellowstone County.

The plaintiffs, Gary and Diana Gray, challenge (1) the validity of a subdivision improvement agreement entered into between the Grays and defendant, City of Billings, and (2) the legality of a special improvement district formed under the provisions of the agreement and accompanying waiver. The trial court found for the City, and the Grays appeal. We vacate the judgment and remand for a jury trial of the plaintiffs' breach of contract claim.

In 1977, the Grays purchased approximately seven acres of surplus state lands located in the City of Billings, paying a purchase price of $47,000 plus $15,000 in delinquent property assessments. When purchased, the acreage was platted for forty-four mobile home lots. After purchase, the Grays, with the aid of an engineering firm, planned and applied for a replatting that would accommodate fifty-four mobile home lots. On November 4, 1977, after public hearing and a series of negotiations and reviews, the Grays signed a subdivision improvement agreement and waiver. Five months later, the City accepted the agreement and approved the preliminary plat.

The City's approval included eight conditions, six to be met by the Grays, one--the vacation of a previously platted street--to be accomplished by the City and, lastly, the creation of a special improvement district for the completion of a sewer system. The sewer district was created. The City, by resolution, abandoned the street, as agreed. The

2

Grays complied with five of the enumerated conditions. The sixth is at issue in the present case.

The agreement entered into by the parties provides that a "crossing" be installed over the city-county drain. The subdivision improvement agreement provided that all required improvements be constructed within eighteen months after filing of the final plat. The Grays, as developers, had the choice of personally funding the improvements or of permitting the creation of a special improvement district to finance construction. The waiver, required by the City as a condition of approval of the Grays' plat, provided, among other things, that the Grays waived all right to protest the formation of a special improvement district to construct the drain crossing. Upon the Grays' failure to construct the crossing, the City passed a resolution creating Special Improvement District No. 1155 (SID 1155) for the purpose of constructing the crossing. The project costs were estimated at $114,000. All costs were assessed to the Grays' subdivision. The Grays then brought suit, seeking to enjoin the City from proceeding with the crossing project until their contract claims, arising out of the execution and construction of the agreement and waiver, could be resolved.

The Grays raise the following issues on appeal:

1. Whether it was error for the District Court to deny them a trial by jury where questions of fact were raised in their claim for breach of contract.

2. Whether the agreement and waiver are rendered voidable by the City's misrepresentations, undue influence and economic duress.

3. Whether the agreement and waiver are unconscionable and thus unenforceable.

3

4. Whether Special Improvement District No. 1155 was lawfully created.

5. Whether their promise to construct a crossing is excused by impossibility of performance.

We hold that it was error to deny plaintiffs a jury trial on their claims for breach of contract. We decline to rule on the remaining issues until jury determination of the existence of a contract between the parties.

I

Breach of contract is traditionally a legal claim. The Grays made timely demand for trial by jury. The Grays allege that the parties either failed to attach like meanings to the word "crossing" or, alternatively, that the crossing to be constructed under SID 1155 is not comparable to the one contemplated by the parties when the agreement and waiver were executed.

Section 28-3-301, MCA, provides that "a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." Where the question of intent depends upon construction of an unambiguous contract, the question is one for the court alone. Greening v. Gazette Printing Co. (1939), 108 Mont. 158, 166, 88 P.2d 862, 864. Where, however, a contract term is ambiguous or obscure or uncertain of meaning, interpretation of the language, and thus a determination of the real intention of the parties, is a matter to be left to the consideration of the jury. Rankin v. Fidelity Trust Co. (1903), 189 U.S. 242, 253, 23 S.Ct. 553, 47 L.Ed. 792; accord, Storrusten v. Harrison (1976), 169 Mont. 525, 533, 549 P.2d 464, 468-469; McNussen v. Graybeal (1965), 146 Mont.

4

173, 186, 405 P.2d 447, 454. The bare term "crossing" is potentially ambiguous and patently uncertain on its face. No elaboration or specification accompany the agreement or waiver nor, apparently, was a design adopted or agreed upon by the parties prior to execution of the agreement and waiver. "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract". Section 28-3-305, MCA; Custer v. Missoula Public Service Co. (1931), 91 Mont. 136, 143, 6 P.2d 131, 134.

The Grays, by seeking subdivision approval, did not bind themselves to perform every act required for the approval. They were free to abandon the plan to replat for fifty-four lots and to divide and sell their land under the existing forty-four lot plat. Their decision rested on their understanding of the comparative costs and benefits of each plan. The appraisal of costs to be attributed to the fifty-four lot plat rested, in turn, on the terms--and the Grays' understanding of the terms--of the parties' agreement. In the agreement entered into by the Grays and the City, the Grays agreed to provide various improvements, including the crossing, in exchange for approval of the fifty-four lot plat. The Grays' waiver of right to protest guaranteed performance of their promise.

The agreement and waiver must be construed in the same manner as any contract. Section 28-3-101, MCA. The Grays challenge the City's interpretation of a basic term of that contract. No contract exists where an essential term is understood by one party to mean one thing and by the other party to mean a different thing. Raffles v. Wichelhaus (the two ships "Peerless") (1864), 2 Hurl. & C. 906; Price v.

5

Stipek (1909), 39 Mont. 426, 104 P. 195. A claim of differing uses of the word "crossing" puts the existence, as well as meaning, of the present contract at issue.

The cause is remanded for jury determination of whether the parties attached like meanings to the term "crossing" so that a contract for its construction exists and, if a contract exists, for a determination of the particular crossing intended by the parties when they entered the contract.

## II

The City, relying on section 28-2-503, MCA, argues that the Grays, by accepting the benefits of the agreement, are bound by the terms of the agreement. Section 28-2-503, MCA, codifies the common law rules of ratification, performance as acceptance of an offer and quasi-contractual obligation:

> "Implied acceptance. (1) Performance of the conditions of a proposal or the acceptance of the consideration offered with a proposal is an acceptance of the proposal.

> "(2) A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known or ought to be known to the person accepting."

The section is not applicable where the terms of a valid contract govern the transaction. Where a contract exists, the duty of the court is to enforce it. Maxted v. Barrett (Mont. 1982), 643 P.2d 1161, 1164, 39 St.Rep. 780. The Grays challenge the existence or, alternatively, the terms of a contract for the crossing. If the agreement and waiver fail or fail to provide for the crossing envisioned by the City, the City may not proceed to enforce the contract through formation of SID 1155. The City's remedy lies, then,

6

in the section 28-2-503, MCA, provisions for quasi-contractual, restitutionary relief. "The theory of unjust enrichment and restitution is brought into play when no contract between the parties exists and the court implies a contract in law." Maxted, supra. See, Palmer, Law of Restitution (1978).


                                III

The cause is remanded for factual determination of the meaning or meanings intended in the word "crossing." The Grays are entitled to have the issue tried by jury.

We have, in the past, purported to permit a court of equity to rule on all questions in a case. Butler Brothers Dev. Co. v. Butler (1941), 111 Mont. 329, 108 P.2d 1041. Defendants rely on an overly broad statement in Butler to the effect that "a court of equity once having jurisdiction of a suit will retain jurisdiction of it for all purposes and dispose of all questions in the case even though this involves a determination of legal issues." Butler, 111 Mont. at 343, 108 P.2d at 1048. We have never held that a court sitting in equity may try those issues of fact raised by plaintiff in a legal cause of action. See, Butler, supra (denying jury trial of the legal issues raised in an answer and cross-claim); Thisted v. Country Club Tower Corporation (1965), 146 Mont. 87, 405 P.2d 432; Downs v. Smyk (Mont. 1982), 651 P.2d 1238, 39 St.Rep. 1786 (trying purely equitable actions without jury); Little v. Mackel (1968), 151 Mont. 421, 443 P.2d 891 (denying jury trial of a fraud defense to an action for specific performance); Citizens State Bank v. Duss (1969), 154 Mont. 18, 459 P.2d 696 (denying jury trial of a permissive counterclaim to a foreclosure action);

7

Montana Coalition for Stream Access, Inc. v. Hildreth (Mont. 1984), ___ P.2d ___, 41 St.Rep. 1192 (denying defendant a jury trial in an action for injunction).

To the extent that _Butler_ and its progeny have been interpreted to deny plaintiff a right to jury trial of his legal claims, the cases are overruled. This Court, in _Butler_, recognized the distinction between those legal issues raised by plaintiff and those raised in defense or by way of a cross or counterclaim. _Butler_, 111 Mont. at 343-344, 108 P.2d at 1048-1049. The Grays, by seeking to enjoin formation of SID 1155, did not abandon their right to have a jury try their legal claim for breach of contract. Dairy Queen v. Wood (1962), 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44. The Grays were free to plead in the alternative--seeking rescission of an avoidable contract and claiming damages under the same contract. Rule 8(e)(2), M.R.Civ.P. The pleading of equitable issues and issues involving only questions of law did not destroy the rights granted plaintiffs by our Constitution and Rules of Civil Procedure. Art. II, Sec. 26, 1972 Mont. Const.; Rule 38(a), M.R.Civ.P. "[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to equitable ones or by a court trial of a common issue between the claims." Ross v. Bernhard (1970), 396 U.S. 531, 537-538, 90 S.Ct. 733, 24 L.Ed.2d 729. "[T]he 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries." _Ross_, 396 U.S. at 538, n. 10.

Recent decisions of this Court and of the United States Supreme Court have moved toward greater protection of the parties' right to jury trial on any factual issues raised in either a court of law or court of equity. In State ex rel. Industrial Indem. Co. v. District Court (1975), 169 Mont. 10, 544 P.2d 438, we affirmed relator's right to jury determination of the existence of the oral contract before the alleged contract could be construed in a declaratory judgment action. The United States Supreme Court has held that the Seventh Amendment protects defendants' right to jury trial of a legal counterclaim. Beacon Theatres, Inc. v. Westover (1959), 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988.

The modern merger of law and equity courts and the liberal joinder provisions of our Rules of Civil Procedure force reevaluation of the traditional justification for permitting an equity court to decide legal issues. We hold that, upon timely demand, all parties are entitled to have their legal claims and counterclaims tried by jury. The rule is consistent with our prior holdings if not entirely consistent with our chosen manner of expression. We foresee no hardship for the courts below. The same rules that permit us liberal joinder also permit a severance of claims and issues.

We vacate the judgment and remand for a new trial in accordance with the views set forth in this opinion.

_____
                Chief Justice

We concur:

_____
Daniel J. Shea
_____
L. C. Gulbrandson
_____
Justices