15 F.3d 1083
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Margaret CODDINGTON, Personally and as Personal
Representative of the Estate of C. Dean
Coddington, Deceased, Plaintiff-Appellee,
v.
WABASH LIFE INSURANCE COMPANY and Great Commonwealth Life
Insurance Co., Defendants-Appellants.
 No. 92-35397.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 5, 1993.
Decided Jan. 26, 1994.
 
 1
 Before: GOODWIN and HUG, Circuit Judges, and MCKIBBEN,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 In January of 1989, Dean Coddington was diagnosed as having lung cancer. From February of that year until his death on July 6, 1989, Dean Coddington was hospitalized on several occasions. During all relevant times of his diagnosis and hospitalization, Dean Coddington held a cancer insurance policy issued by Wabash Life Insurance Co. ("Wabash"). This was a "benefits schedule" insurance policy which provided cash payments to Dean Coddington as a supplement to benefits paid to him under his separate Blue Cross/Blue Shield policy. The Wabash policy stated that it provided benefits for losses "resulting from hospital confinement and other specified expenses incurred for the definitive treatment of cancer." The policy does not define "definitive treatment of cancer."
 
 
 4
 From April until August 1989, Dean Coddington filed seven claims under the Wabash policy. Wabash approved four of these claims and paid $7,344.60. Wabash, however, denied the other three claims based upon its conclusion that those claims involved hospitalizations and treatments which were not covered by the cancer policy. These hospitalizations involved the treatment of low blood pressure, dehydration and pneumonia. Dean Coddington's wife, Margaret Coddington ("Coddington"), disputed this denial of coverage and brought suit in Montana Federal District Court.[1] Coddington alleged five state law claims: (1) breach of contract; (2) breach of implied contractual duties; (3) violation of Montana's Unfair Trade Practices Act ("UTPA"); (4) actual fraud; and (5) constructive fraud.
 
 
 5
 At trial, Coddington presented evidence that her husband's treatment for low blood pressure, dehydration and pneumonia was a direct result of his lung cancer. Wabash presented evidence of its analysis of the three claims at issue and its decision that these claims did not represent treatment of cancer and were, therefore, not covered by the cancer policy.
 
 
 6
 At the close of Plaintiff's case, the trial judge denied Wabash's motion for directed verdict. At the conclusion of the first phase of trial,[2] the jury found Wabash liable for breach of contract, violation of the UTPA and punitive damages. The jury awarded Coddington $6,383 on the contract claim and returned a special verdict finding that Wabash's conduct was not fraudulent. The trial judge then denied Wabash's motion for judgment not withstanding the verdict ("JNOV"). At the end of the second phase, the jury awarded Coddington $1.6 million in punitive damages. Wabash appeals this verdict and award on several grounds, generally claiming that there was insufficient evidence to support a finding of breach of contract or to award punitive damages.
 
 A. The Contract Claim
 
 7
 The district court's denial of Wabash's motion for JNOV on Coddington's contract claim is reviewed by this Court de novo. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 815 (1992).
 
 
 8
 Wabash claims that the scope of coverage under its policy was unambiguous, that it expressly covered only expenses for the treatment of cancer and that it incorporated a pathological definition of cancer which limited the scope of the cancer policy. Wabash contends Dean Coddington was not treated for cancer during the three hospitalizations at issue. In addition, Wabash points to the failure of Coddington to offer any evidence of damages. Without this evidence, Wabash argues, the court erred in submitting the contract claim to the jury.
 
 
 9
 We do not find the policy was unambiguous as a matter of law. It did not define the "definitive treatment of cancer" and included inferences that the policy covered expenses "related to" the treatment of cancer. Under Montana law, when the wording or phraseology in an insurance contract taken as a whole is subject to two different interpretations, it is ambiguous. Canal Ins. Co. v. Bunday, 813 P.2d 974, 977 (Mont.1991). When ambiguous, a determination of the actual meaning of an insurance contract is a question of fact for the jury. Gray v. City of Billings, 689 P.2d 268, 270 (Mont.1984); McNussen v. Graybeal, 405 P.2d 447, 454 (Mont.1965). In addition, any ambiguities in an insurance policy are construed against the insurer. Wellcome v. Home Ins. Co., 849 P.2d 190, 192 (Mont.1993).
 
 
 10
 Coddington's contract claim raised questions of the proper interpretation of the insurance policy. Because the policy was ambiguous, its proper interpretation was a question of fact for the jury to resolve.
 
 
 11
 In addition, although Coddington did not offer evidence directly on the issue of damages, the court determined that any damages could be mathematically determined by the jury through application of the rate schedule within the policy to the number of hospitalizations and treatments at issue.[3] There was sufficient evidence in the record to support the jury's verdict on damages for breach of contract. Moreover, Montana law establishes breach of contract as a legal wrong regardless of any showing of actual damages. Kitchen Krafters, Inc. v. Eastside Bank of Montana, 789 P.2d 567, 571 (Mont.1990).
 
 
 12
 Finally, we reject Wabash's contention that the jury was improperly instructed on the contract claim. Instructions 23 through 29 concerned the definition and the legal effects of an ambiguous provision in an insurance policy. These instructions accurately reflect Montana law, and the district judge did not abuse his discretion in so instructing the jury. Therefore, we affirm the judgment awarding damages to Coddington on the contract claim.
 
 B. The Punitive Damages Award
 
 13
 The district court denied Wabash's motion for directed verdict and its motion for judgment notwithstanding the verdict on the issue of punitive damages. An appeal does not lie from a denial of a motion for a directed verdict. Locricchio v. Legal Service Corp., 833 F.2d 1352, 1356 n. 2 (9th Cir.1987). A denial of a motion for JNOV is reviewed de novo to determine if the plaintiff's claims were supported by substantial evidence. Erickson, 960 F.2d at 804. It is error to deny a motion for JNOV when it is clear that the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party. Id.
 
 
 14
 Although Wabash may have acted negligently in handling Coddington's claims, the evidence did not reasonably support a finding that the insurer acted maliciously. Accordingly, the district court erred when it denied Wabash's motion for JNOV.
 
 
 15
 Section 27-1-221(1) of the Montana Code ("MCA") allows reasonable punitive damages when the defendant has been found guilty of actual fraud or actual malice. Both actual fraud and actual malice are defined in the statute as follows:
 
 
 16
 (2) A defendant is guilty of actual malice if he has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and: (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.
 
 
 17
 (3) A defendant is guilty of actual fraud if he: (a) makes a representation with knowledge of its falsity; or (b) conceals a material fact with the purpose of depriving the plaintiff of property or legal rights or otherwise causing injury.
 
 
 18
 MCA Sec. 27-1-221(2), (3). In addition, the statute requires that all elements of a claim for punitive damages be established by "clear and convincing evidence," a standard higher than preponderance of the evidence. MCA Sec. 27-1-221(5).
 
 
 19
 The jury specifically found that Wabash's conduct was not fraudulent. Therefore, any punitive damage award must be based upon clear and convincing evidence of actual malice.
 
 
 20
 Coddington argues that the evidence of actual malice was sufficient to support the verdict under the clear and convincing standard of proof. In support of this argument, Coddington relies on three areas of proof. First, Coddington points to the failure of the cancer policy to define the phrase "definitive treatment of cancer" and to the policy language stating that the policy "provides benefits for hospital services and other expenses resulting from cancer." Coddington argues that this language expressly covers Dean Coddington's hospitalizations and that Wabash's denial of coverage, therefore, shows malice.
 
 
 21
 Second, Coddington argues that the testimony of Guthrie and Little, claims analysts for Wabash, regarding the language used in the letters sent to Coddington denying coverage, shows malicious behavior because the letters contained language which was not found in the policy.[4] Coddington contends the evidence shows the language used was intentionally "made up" to deny coverage.
 
 
 22
 Third, Coddington argues that this testimony also shows indifference on the part of Wabash through the claims analysts' focus upon the actual treatment received by Dean Coddington and not upon whether the treatment had a direct connection to his lung cancer. This aspect of Wabash's investigation into the insurance claims, Coddington argues, shows that the investigation was insufficient and unreasonable, providing additional proof of Wabash's malice toward the Coddingtons.
 
 
 23
 At most, this evidence shows the nature of the contractual dispute relative to the coverage of the cancer policy and is not clear and convincing evidence of any actual malice by Wabash. The letters denying coverage simply restated the language of the policy and the carrier's reasonable interpretation of that language. The letters contained no intentional misrepresentations. In addition, Wabash's focus upon the actual treatment received by Dean Coddington shows a coverage dispute based on the scope of the cancer policy. Finally, a lack of malice is also evident from Wabash's coverage of other claims submitted by Coddington for treatment of his lung cancer. Wabash's willingness to cover these claims while denying others is strong evidence of a coverage dispute, not of actual malice.
 
 
 24
 The evidence was insufficient to show clearly and convincingly that Wabash had knowledge of facts or intentionally disregarded facts that created a high probability of injury to Dean Coddington. Without evidence of actual malice, there is no basis under Montana law for punitive damages. We therefore reverse the judgment awarding punitive damages.
 
 
 25
 Having concluded the punitive damage judgment should be vacated, we do not reach Wabash's other contentions.
 
 
 26
 Accordingly, the judgment below is AFFIRMED in part and REVERSED in part.
 
 
 
 *
 The Honorable Howard D. McKibben, United States District Judge, District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Jurisdiction in the district court was based upon 28 U.S.C. Sec. 1332
 
 
 [2]
 Montana's punitive damages statute requires a bifurcated trial procedure. In the first phase, the jury determines whether the defendant is liable for punitive damages. In the second phase, the jury decides the amount of any punitive damages. MCA Sec. 27-1-221
 
 
 [3]
 The Wabash cancer policy includes a "Schedule of Benefits" which outlines the benefits available under the policy by the number of days in a hospital, number of days of out-patient care or the specific treatment involved. (Appellant's Exc. at 88.)
 
 
 [4]
 The language at issue in the two letters is similar and reads as follows:
 Unfortunately, this is a cancer treatment policy which provides benefits only for the definitive treatment of cancer. No benefits are provided, nor premiums charged to covered [sic] the expenses of treating any other condition even if that condition has some connection to the underlying cancer.
 (Appellant's Exc. at 75, 76.)