NO.   94-133

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

GORDON   SULLIVAN,

>        Plaintiff,  Respondent,  and
>        Cross-Appellant,

>   v.

SISTERS  OF  CHARITY  OF  PROVIDENCE
OF MONTANA,  a  nonprofit  corporation,
d/b/a  COLUMBUS  HOSPITAL,

>        Defendant,  Appellant,  and
>        Cross-Respondent.

FILED

NOV 22 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable John Warner, Judge presiding.


COUNSEL OF RECORD:

>        For Appellant:

>>        James R. Walsh and Dennis P. Clarke,
>>        Smith, Walsh, Clarke & Gregoire,
>>        Great Falls, Montana

>        For Respondent:

>>        Antonia P. Marra and Barbara E. Bell,
>>        Bell & Marra, Great Falls, Montana


Submitted on Briefs:   August 11, 1994

Decided:   November 22, 1994

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Gordon Sullivan commenced this action in the District Court for the Eighth Judicial District in Cascade County to recover damages from his employer, the Sisters of Charity, based on his discharge from employment at the Columbus Hospital. Sullivan's wrongful discharge claim was tried before a jury, which returned a verdict in his favor in the amount of $70,000. After Columbus filed its notice of appeal, Sullivan received an anonymous file containing information related to his termination. Sullivan moved to reopen discovery and for sanctions. The District Court found that Columbus should have disclosed the information during discovery, granted Sullivan's motion for sanctions, and ordered a new trial on damages. Both parties appeal from the order of the District Court. We affirm the District Court.

The issues raised by Columbus are:

1.    Did the District Court err when it granted Sullivan's motion for a new trial limited to the issue of damages?

2.    Did the District Court err when it imposed sanctions against Columbus in the amount of $5500?

3.    Was Sullivan's notice of cross-appeal timely?

The issues raised by Sullivan's cross-appeal are:

4.    Did the District Court err when it bifurcated Sullivan's discrimination claim from his wrongful discharge claim, and disallowed Sullivan's demand for a jury trial of the discrimination claim?

5.   Did the District Court err when it held that Sullivan's remedies are limited to those provided in the Wrongful Discharge From Employment Act?

6.   Were the sanctions imposed by the District Court adequate?

<u>FACTUAL   BACKGROUND</u>

In November 1982, Sullivan began working as director of the public relations department at Columbus.  In 1983, Sullivan hired Laura James (now Laura James Goldhahn, but referred to in this opinion as James) as an assistant.  James and Sullivan apparently did not get along well.  Eventually, Sullivan's job duties were divided between Sullivan and James.  Sullivan became director of marketing and James became director of public relations.  Sullivan was not given a job description which explained his new duties and he was removed from his committee positions: however, his salary remained the same.

In 1985, and again in 1986, Sullivan injured his back at work. After the second accident, Sullivan was hospitalized and informed that he needed back surgery.  While implementing some new programs he had started, Sullivan informed his supervisor, Joel Lankford, that he required surgery and had scheduled it for April 1987. Lankford told Sullivan that he must return to work or his job would be in jeopardy.  A few days later Sullivan returned to work without a physician's permission.  Shortly thereafter, Sullivan received a negative job performance evaluation from Lankford.   Columbus's rules provided that if an employee received a negative evaluation,

3

he has four months to improve negative ratings if he is to retain employment. Therefore, Sullivan postponed the surgery because he felt he had to respond to the negative job evaluation or lose his job. Four months later, on July 21, 1987, Sullivan received a superior rating. Thereafter, Sullivan's back worsened, so he rescheduled surgery and commenced his leave of absence on November 15, 1987.

Before surgery, in January 1988, Sullivan met with his new supervisor, Sister Eileen Croghan, who informed him that several people at Columbus questioned the legitimacy of his workers' compensation claim. Sullivan testified that at the January meeting Croghan told him that when he returned from surgery she would request that he resign, and that if he did not resign., he would be fired. Croghan recalled this meeting, but denied this conversation. Sullivan took leave, based on his disability, and had back surgery in Minneapolis on February 1, 1988.

At this time, Sullivan was earning $42,182 per year, not including benefits. After surgery on April 6, 1988, Sullivan arranged to meet Croghan to inform her that he had a release from his physician and would be able to work part-time. At this meeting, Croghan advised Sullivan that his position was eliminated because of financial demands. Sullivan was offered a job in the public relations department as an assistant to James at less than half of his previous salary. He did not accept the offer.

As of December 1993, Sullivan had not obtained new employment. At trial, Sullivan's expert testified that during four years of

4

unemployment as marketing director, Sullivan lost compensation worth $237,000.

Sullivan based his claim against Columbus for wrongful discharge on the common law, and the 1987 Wrongful Discharge From Employment Act that became effective on July 1, 1987, and superseded common law remedies. He also moved to amend his complaint to include a claim based on discrimination.

In several written interrogatories submitted prior to trial, Sullivan asked for all information in Columbus's possession which was related to the contemplated elimination of his position. Columbus did not produce those documents now known as the anonymous file, nor the Laura James file, which included many of the same documents.

On March 23-26, 1992, the wrongful discharge claim was tried before a jury. The jury found that Columbus wrongfully discharged Sullivan and awarded him $70,000 as compensatory damages. Sullivan moved for a new trial based on insufficient damages. The District Court granted the motion and ordered a new trial on damages because it concluded that the jury misunderstood the court's instructions. The District Court denied Columbus's motion for judgment notwithstanding the verdict on the issue of liability.

Columbus appealed. While the appeal was pending, on or about August 20, 1992, Sullivan received the anonymous file. The file indicates that unbeknownst to Sullivan, and for some time before he was terminated, James prepared documents or proposals, pursuant to Lankford's request, to consolidate Sullivan's department with

James's department, and allegedly to terminate Sullivan. Sullivan was not aware of these documents and the alleged plan until after the trial.

In September 1992, Sullivan moved the District Court to reopen discovery and requested sanctions. Since the matter was on appeal, the District Court decided it did not have jurisdiction. Therefore, Sullivan filed a similar motion with this Court. Columbus produced further materials, including the Laura James file, and provided affidavits from its employees denying knowledge of the anonymous file and its contents. This Court then dismissed the first appeal without prejudice, and remanded the case to the District Court to determine whether discovery should be reopened and whether or not sanctions were appropriate.

The District Court held a hearing on July 7, 1993, and found that Columbus willfully withheld documents relating to damages and should be sanctioned. Sullivan and the Court agreed that reopening discovery would be useless. District Court Judge John McCarvel then recused himself from the case.

On September 7, 1993, District Court Judge John Warner accepted jurisdiction. After hearing evidence on December 21 and 22, 1993, regarding the anonymous file, and hearing testimony from several witnesses, including Sullivan's counsel, the court issued its findings of fact, conclusions of law, and order on December 30, 1993.

The Court found, among other things, that:

1.    The documents produced after trial relate to arguments made at trial and may have weakened Columbus's case relating to liability and affected the case regarding damages.

2.    The documents were relevant, would have changed the trial strategy, and indicate a plan, at least to some extent, concerning Sullivan's employment.

The court ordered a new trial on damages and imposed sanctions against Columbus in the amount of $5500 to cover attorney fees related to summary judgment and post-trial motions.   The court apparently awarded nothing for the costs of trial.

In summary, two District Court Judges, at different times, ordered a new trial on damages alone.   Columbus appeals from the District Court's order, and Sullivan cross-appeals.

<u>ISSUE 1</u>

Did the District Court err when it granted Sullivan's motion for a new trial limited to the issue of damages?

Columbus argues that the District Court erred when it granted a new trial limited to the issue of damages.   When we consider whether a district court imposed proper sanctions for a discovery abuse, we determine whether the district court abused its discretion.   *Eisenmenger v. Ethicon, Inc.* (1994), 264 Mont. 393, 402, 871 P.2d 1313, 1319.   In this case, Sullivan moved for sanctions pursuant to Rules 11 and 37(d), M.R.Civ.P.   Sanctions were imposed pursuant to Rule 37(d).   However, we will affirm their imposition, if appropriate, under either of the above rules.   *Jerome v. Pardis*

7

(1989), 240 Mont. 187, 783 P.2d 919. This Court defers to the trial court because it is in the best position to know whether the party in question has disregarded the other's rights, and is in the best position to determine which sanction is most appropriate. *Eisenmenger*, 871 P.2d at 1319 (citing *Dassori v. Roy Stanley Chevrolet Co.* (1986), 244 Mont. 178, 179-80, 728 P.2d 430, 431). In *Eisenmenger*, 871 P.2d at 1320-21, we concluded that if one party does not properly respond to discovery and the other party suffers prejudice, a district court's decision to impose a default judgment as a sanction was proper.

Columbus argues that ordering a new trial on the damages issue alone, and not ordering a retrial on liability, is the equivalent of a default judgment. While, according to our decision in *Eisenmenger*, the entry of default may be appropriate as a sanction for failure to candidly respond to discovery, we disagree that a default was entered in this case.

Here, the jury rendered a verdict for Sullivan on the issue of liability. The District Court concluded that there was substantial evidence to support that verdict when it denied Columbus's motion for judgment notwithstanding the verdict. Columbus does not contest that conclusion on appeal.

The sanction actually imposed was a new trial on the issue of damages which, for the reasons discussed in *Eisenmenger*, we conclude did not result from an abuse of discretion.

Further, the District Court's order regarding a new trial was justified without regard to the issue of sanctions. Montana has long recognized that district courts are empowered to order a new trial on damages alone. *Bohrer v. Clark* (1978), 180 Mont. 233, 590 P.2d 117. In *Bohrer*, the district court found the jury's damage award insufficient and after plaintiffs moved to alter or amend the judgment or for a new trial, the court increased the jury's damage award. Both parties appealed and we held that Rule 59(a), M.R.Civ.P., provides for instances when a new trial on damages is appropriate. *Bohrer*, 590 P.2d at 122-23. We recognized that although infrequently necessary, "the power of both trial and appellate courts to order such a limited trial is well recognized." *Bohrer*, 590 P.2d at 123. We relied partly on 58 Am. Jur. 2d New Trial § 27, stating that when there is an error in the determination of damages, and the court is satisfied that the jury properly settled the liability issues based on sufficient evidence, and an error in damages requires setting aside the verdict, a new trial on damages may be proper. *Bohrer*, 590 P.2d at 123. We also recognized that it is generally within the district court's discretion to allow or refuse to allow a new trial on the grounds of inadequate damages. *Bohrer*, 590 P.2d at 122.

In *Bohrer*, the district court concluded that the jury's award was inadequate. We stated, "[u]nder these circumstances, an order granting a new trial limited to the issue of damages would have

9

been within the court's discretion." *Bohrer,* 590 P.2d at 123. We indicated a preference for a new trial on the issue of damages, rather than an assessment of damages by the district court.

After the newly discovered evidence appeared, Judge **McCarvel** and Judge Warner both found that the undisclosed information would have affected the damage award. We conclude that ordering a new trial limited to the issue of damages based on these findings was not an abuse of discretion. The District Court did not substitute its judgment for the jurors' decision regarding damages. Rather, the court properly ordered a new trial on damages so the jury could hear all evidence relevant to damages. There was substantial evidence to support the jury's verdict on the issue of liability. Therefore, the District Court did not err when it declined to order a new trial on that issue. The order of the District Court granting a new trial limited to the issue of damages is affirmed.

<u>ISSUE 2</u>

Did the District Court err when it ordered sanctions against Columbus in the amount of $5500?

As mentioned above, in determining whether a district court imposes proper sanctions for discovery abuse, we examine whether the district court abused its discretion. *Eisenmenger* , 871 P.2d at 1319. Judge Warner ordered Columbus to pay Sullivan $5500 for attorney fees as a sanction for discovery abuse. The District Court heard testimony regarding Sullivan's attorney fees. After a hearing, Judge Warner found that $2500 for amounts expended for

10

work on summary judgment and $3000 for work required after the verdict was a sufficient sanction. Judge Warner did not award attorney fees for amounts expended trying the case.

The District Court Judge is better situated to decide the appropriate sanctions in this case. He heard evidence regarding the missing files and attorney fees, and concluded that $5500 was a reasonable amount. We conclude that the District Court did not abuse its discretion when it imposed monetary sanctions in the amount of $5500. This analysis is also dispositive of the issue raised by Sullivan's cross-appeal challenging the sufficiency of sanctions.

<u>ISSUE 3</u>

Was Sullivan's notice of cross-appeal timely?

Columbus claims that Sullivan did not file a notice of appeal after the District Court's March 19, 1992, order, and that pursuant to Rule 5(a)(3), M.R.App.P., notice of cross-appeal must be filed within 14 days from the notice of appeal. Since Columbus's first notice of appeal was filed on June 1, 1992, and no notice of cross-appeal was filed within 14 days, Columbus argues that Sullivan's cross-appeal is untimely, and therefore, barred. However, Columbus's original appeal was dismissed without prejudice on February 18, 1993, and this case was remanded for further proceedings in the District Court.

Those proceedings were concluded by the findings, conclusions, and order filed on December 30, 1993. Notice of entry of judgment was served on January 7, 1994, and Columbus filed a new notice of

11

appeal on February 1, 1994. Sullivan filed his notice of cross-appeal on February 3, 1994, well within the time provided for by Rule 5(a)(3). We conclude that Sullivan's cross-appeal was timely.

<u>ISSUE 4</u>

Did the District Court err when it bifurcated Sullivan's discrimination claim from his wrongful discharge claim, and disallowed Sullivan's demand for a jury trial of the discrimination claim?

We will uphold a district court's decision to bifurcate issues absent a clear abuse of discretion. See *In re Marriage of Geertz* (1988), 232 Mont. 141, 144, 755 P.2d 34, 36. We have recognized that a party who pleads legal and equitable claims is entitled to have legal claims heard by a jury. *Gray v. City of Billings* (1984), 213 Mont. 6, 689 P.2d 268. In *Gray*, we stated that liberal rules of civil procedure permit joinder of claims and recognized that the same rules permit severance of claims and issues. *Gray*, 689 P.2d at 272.

Sullivan argues that the claims should not have been bifurcated and that he is entitled to a jury trial of the discrimination claim. At the time the initial bifurcation order was entered, and when Judge Warner reaffirmed it on December 30, 1993, Montana case law held that there is no right to a jury trial of discrimination claims based on the Montana Human Rights Act. See *Vainio v. Brookshire* (1993), 258 Mont. 273, 277, 852 P.2d 596, 599;

12

*Romero v. J & J Tire* (1989), 238 Mont. 146, 151-52, 777 P.2d 292, 295-96.
Since Montana law allows district courts broad discretion to segregate claims, and Montana law does not guarantee the right to a jury trial in discrimination claims, we conclude that the District Court did not abuse its discretion by severing the claims in this case.

<u>ISSUE 5</u>

Did the District Court err when it held that Sullivan's remedies are limited to those provided in the Wrongful Discharge From Employment Act?

Sullivan argues that the undisclosed documents indicate a plan to terminate him in 1987 before the new law was enacted on July 1. He claims that the file constitutes evidence of constructive discharge. Sullivan incorrectly interprets Montana's law of constructive discharge. Prior to the Act's adoption, Montana case law defined constructive discharge similar to the current definition in § 39-2-903(1) MCA:

> [T]he voluntary termination of employment by an employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the only reasonable alternative.

*See Kestell v. Heritage Health Care Cop.* (1993), 259 Mont. 518, 524, 858 P.2d 3, 6. In *Kestell*, we recognized that prior case law defined constructive discharge essentially the same as the current statute, relying on *Snell v. Montana-Dakota Utilities* Co. (1982), 198 Mont. 56, 643 P.2d 841, and *Niles v. Big Sky Eyewear* (1989), 236 Mont. 455, 771 P.2d

13

Under those cases, and under the Act, to find constructive discharge "the fact finder must decide whether the employer has rendered working conditions so intolerable that resignation is the only reasonable alternative." *Kestell,* 858 P.2d at 7 (citing *Niles*, 771 P.2d at 118). The intolerable situation about which Sullivan complains occurred after the Act became effective. Sullivan was not informed that his position was eliminated until April 1988, and he was not forced to quit before the new law was enacted. We hold, based on the facts in this case, that a constructive discharge did not occur prior to the effective date of the Wrongful Discharge From Employment Act.

For similar reasons, we must reject Sullivan's claim that the implied covenant of good faith and fair dealing, as it existed before the Act, applies in this case. Pursuant to § 27-2-102(1)(a), MCA, a cause of action accrues when all elements of the cause exist. In *Martin v. Special Resource Management, Inc.* (1990), 246 Mont. 181, 185, SO3 P.2d 1086, 1089, we held that all of the elements to establish a breach of the implied covenant, if present at all, were present when the employee received notice of termination. Sullivan received notice after the Act's effective date, and was terminated after that date. Therefore, the Act applies to his claim.

We hold that the District Court did not err when it concluded that the Wrongful Discharge From Employment Act is Sullivan's exclusive remedy.

14

We affirm in all respects the orders and judgment of the District Court.

_____
J tice

We concur:

_____

_____

_____

_____
Justices

15